UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

)
)
In re COMMISSIONER'S SUBPOENA TO        )   No. **SA04CA0954**
RACKSPACE MANAGED HOSTING               )
)                                    
)
)
)

## MOTION TO UNSEAL AND FOR EXPEDITED HEARING

Movants the Electronic Frontier Foundation ("EFF"), Urbana-Champaign Independent Media Center Foundation ("UCIMC"), and Jeffrey Moe hereby move for this Court to immediately lift all sealing orders regarding the Commissioner's Subpoena (the "Order") issued in this District to Rackspace Managed Hosting, and for an expedited hearing on the matter.

### I.    SUMMARY OF FACTS[1]

At the secret request of a foreign government, the U.S. government recently silenced our modern printing presses—over twenty independent news web sites and an Internet radio station. Yet the federal court order upon which this prior restraint of unprecedented scope was based is under seal and cannot be inspected by the public or those who were silenced, contrary to constitutional and common law rights of access to court records.

Movant Jeffrey Moe is a customer of Rackspace Managed Hosting, which provides him with the use of two dedicated Internet "servers."[2] Moe uses these servers to host over twenty news web sites published by "Independent Media Centers" (IMCs), local volunteer coalitions that publish independent online newspapers; this global network of local IMCs comprises the "Indymedia" news network. To the surprise of Moe, Indymedia journalists, and readers, these heavily-trafficked news web sites[3] and an Indymedia Internet radio station were unexpectedly

---

[1] *See* Movants' appended Statement of Facts and supporting affidavits for complete narrative.

[2] A "server" is a computer connected to the Internet that offers online media content such as Web sites and/or services such as email; the servers here were "dedicated" to Moe's use.

[3] *See, e.g.*, <http://wmass.indymedia.org/>, <http://www.indymedia.org.uk/>, <http://italy.indymedia.org/>.

pulled off the Internet on October 7th, 2004. On or around that date, according to Rackspace, an employee in its San Antonio office "received a federal order to provide your hardware," i.e., the two Indymedia servers, to an unidentified "requesting agency." According to Rackspace, the Order was a Commissioner's Subpoena issued by a federal court pursuant to 28 U.S.C. § 1782 and based on a request by a foreign government under a Mutual Legal Assistance Treaty (MLAT).[4]

Rackspace has since refused to provide any further information about the incident or provide a copy of the Order to Moe, contending that the case is "under seal." Movants' counsel has contacted the FBI, the Departments of State and Justice, the U.S. Attorney's Office in San Antonio and this Court in an effort to independently determine the origin of the Order, but no office has accepted responsibility, much less identified the case number or issuing court. However, as 28 U.S.C. § 1782 only authorizes "the district court of the district in which a person resides or is found" to order that person to produce documents or things, and considering that the Order was served on Rackspace in San Antonio, a court in the Western District of Texas must have issued the Order. Therefore Movants pray for this court to exercise its discretion and immediately unseal the entire record in this matter.[5]

## II.    STANDING

As a result of the Indymedia seizure, Movant Moe has suffered direct injury to his First and Fourth Amendment rights. His speech rights were squelched and his private information and communications seized, yet he was given no notice or justification for this action nor any avenue for redress. Multiple courts have given persons whose property has been seized standing to challenge the sealing of documents supporting the warrant resulting in the seizure, based on Fourth Amendment and Due Process rights. *See, e.g., In re Wag-Aero Inc.*, 796 F.Supp. 394

---

[4] The U.S. has MLATs in place with nineteen countries. *See* U.S. Dept. of State, *Mutual Legal Assistance in Criminal Matters Treaties (MLATs) and Other Agreements* (visited Oct. 21, 2004) <http://travel.state.gov/law/mlat.html>. Movants have so far been unable to conclusively identify the requesting government.

[5] Including but not limited to the foreign government's request, the application to the Court for a commission to obtain the evidence requested, the order granting that commission, and the Commissioner's Subpoena itself.

(E.D. Wis. 1992); *In re Search Warrants for 2934 Anderson Morris Road*, 48 F.Supp.2d 1082, 1083 (N.D. Ohio 1999). Moe has similar standing to demand that he be allowed to inspect and copy the Order used to seize his computer files.

Movants EFF and UCIMC also have standing as publishers and interested members of the public. EFF is a non-profit, member-supported civil liberties organization working to protect civil rights and free expression in the digital world. In that role EFF publishes educational and advocacy materials for its 13,000 members and the public, via both a weekly email newsletter and <http://www.eff.org>, one of the most visited web sites on the Internet. UCIMC is an independent news media outlet and an autonomous portion of Indymedia, a collective of Independent Media Centers (IMCs) and thousands of journalists offering grassroots, non-corporate coverage of news events. *See* <http:/www.ucimc.org>.  As news publishers and free speech advocates, EFF and UCIMC both have a distinct interest in discovering and publicizing the facts behind the Indymedia seizure.

As the Supreme Court has held, all members of the public must be given a right to be heard on the question of their exclusion from judicial proceedings, *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982), and it is well-settled in this Circuit that non-party members of the media have standing to challenge closure orders. *See U.S. v. Chagra*, 701 F.2d 354, 359-60 (5th Cir. 1983) (holding that newspapers and reporter, although nonparties to criminal case, had standing to appeal an order closing pretrial bail reduction hearing).

Accordingly, the Movants have standing to bring this motion.

## III.   MOVANTS HAVE CONSTITUTIONAL AND COMMON LAW RIGHTS OF ACCESS TO THE SEALED ORDER AND RELATED RECORDS

### A.   Movants' Common Law Right of Access

It is well settled in this Circuit that the public has a common law right to inspect and copy judicial records.[6]  Because common law establishes a presumption of access to judicial records,

---

[6] *See S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993); *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 429 (5th Cir.1981); *see also Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978).

*see S.E.C.*, 990 F.2d at 848, "the district court's discretion to seal the record of judicial proceedings is to be exercised charily" or with great caution. *Federal Savings & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987), citing *Publicker Industries Inc. v. Cohen*, 733 F.2d 1059 (3rd Cir. 1984). Although this common law right of the access has been extended uniformly by the circuit courts to cover both civil and criminal matters,[7] the current motion seeking to uncover the basis for the Indymedia servers' seizure is particularly analogous to motions to unseal search warrant affidavits, to which the common law right of access has been applied. *See In the Matter of Searches of Semtex Industrial Corp., et al.*, 876 F.Supp 426 (E.D. NY 1995) (holding that the indefinite sealing of a warrant affidavit was inappropriate, even in an ongoing multi-state investigation involving multiple unindicted targets).

Because of the common law presumption of access, sealing of the Order and related records "is an extraordinary action, and should be done only if the government shows a real possibility of harm." 3A Fed. Prac. & Proc. Crim.3d § 672. The seal must not be granted or continued merely at the government's request; rather, the court must exercise its independent discretion in the matter. *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65 (4th Cir. 1989). In exercising that discretion to seal—or unseal—judicial records, the court must weigh the public's right of access against any factors favoring secrecy. *See S.E.C.*, 990 F.2d at 848; *see also Nixon*, 435 U.S. at 599, 602, 98 S.Ct. at 1312, 1314 (court must consider "relevant facts and circumstances of the particular case"); *Belo*, 654 F.2d at 434; *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983) ("The historic presumption of access to judicial records must be considered in the balance of competing interests." (citing *Belo*)). And although the arguments favoring secrecy in this case are unknown to Movants, they must have necessarily weakened now that the Order has been complied with. No evidence will be destroyed if the seal is lifted, as it has already been seized; nor will any malefactors be notified of any investigation that has not

---

[7] *See, e.g., Leucadia, Inc. v. Applied Extrusion Tech., Inc.*, 998 F.2d 157, 161 (3rd Cir. 1993); *Smith v. United States District Court*, 956 F.2d 647, 650 (7th Cir. 1992); *San Jose Mercury News, Inc. v. U.S. District Court*, 187 F.3d 1096, 1102 (9th Cir. 1999); *FTC v. Standard Financial Management*, 830 F.2d 404, 408 n.4 (1st Cir. 1987); *In re Continental Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984); *Brown & Williamson Tobacco Corp. v. Federal Trade Comm'n*, 710 F.2d 1165, 1179 (6th Cir. 1983); *EEOC v. Erection Co.*, 900 F.2d 168, 169 (9th Cir. 1990).

already been made obvious to the public by virtue of the servers' disappearance from the Internet, and the resulting extensive press coverage. *See, e.g.*, Appendix, Opsahl Aff., Ex. B. In fact, there is no reason to believe that any U.S. investigation would be jeopardized.

Moreover, the public and the press have a clear and compelling interest in discovering under what authority the government was able to unilaterally prevent Internet publishers from exercising their First Amendment rights, and in uncovering details that may indicate whether this action violated any constitutional or statutory rights of Movant Moe, members of the broader Indymedia network, or the public itself. Although "every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes," *Nixon*, 435 U.S. at 598, 98 S.Ct. at 1312, the current records are sought not for any improper purpose, but only out of a "desire to keep a watchful eye on the workings of public agencies." *Id.* Therefore, even if there are some continuing grounds to justify the seal, the Order and related records must at least be released to Movants in redacted form to the extent it is possible to do so without undue harm to the public interest. *Baltimore Sun Co.*, 886 F.2d at 66.

### B.   Movants' First Amendment Right of Access

Movants are further entitled to access to the Order and related records under the First Amendment, which "guarantees the press and the public a general right of access to court proceedings and court documents unless there are compelling reasons demonstrating why it cannot be observed." *Washington Post v. Robinson*, 935 F.2d 282, 287-88 (D.C. Cir. 1991).

The Supreme Court has consistently recognized that the public and the press have a First Amendment right of access to criminal proceedings and records. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980) and *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982) (criminal trials); *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984) ("*Press-Enterprise I*") (voir dire and transcripts); *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) ("*Press-Enterprise II*") (preliminary hearings). The circuit courts have broadly extended this right of access to filed legal documents and other court records, even in pretrial

proceedings,[8] and have applied it in civil as well as criminal matters.[9]  The Fifth Circuit has similarly recognized the First Amendment right of access to judicial proceedings and records,[10] and the Eighth Circuit has recognized a First Amendment right of access to search warrant affidavits, which must be unsealed unless nondisclosure "is necessitated by a compelling government interest." *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 574 (8th Cir. 1988), *cert. denied*, 488 U.S. 1009 (1989).

In determining whether the First Amendment right of public access extends to a particular type of proceeding, the Supreme Court considers "whether the place and process have historically been open to the press and general public" and "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8. As the exact nature of the proceedings leading to the Order are unknown to the Movants, it is difficult to evaluate the first *Press-Enterprise* prong regarding a history of access to those proceedings. Even so, the Order and relevant documents are likely

---

[8] *See In re Globe Newspaper Co.*, 729 F.2d 47, 51, 59 (1st Cir. 1984) (the First Amendment right of access "has also been extended to documents filed in pretrial proceedings"); *U.S. v. Haller*, 837 F.2d 84, 87 (2nd Cir. 1988) ("right of access extends to plea hearings and thus to documents filed in connection with those hearings"); *United States v. Smith*, 123 F.3d 140, 146 (3rd Cir. 1997) (First Amendment right of access to criminal proceedings is extended "to the records and briefs that are associated with that proceeding"); *In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986) ("the First Amendment right of access applies to documents filed in connection with plea hearings"); *United States v. Corbitt*, 879 F.2d 224, 228 (7th Cir. 1989) ("this court has held that the first amendment right of access extends to documents submitted in connection with a judicial proceeding"); *Oregonian Publ'g Co. v. U.S. District Court*, 920 F.2d 1462, 1465 (9th Cir. 1990) ("Under the first amendment, the press and the public have a presumed right of access to court proceedings and documents."), *cert. denied*, 501 U.S. 1210 (1991); *U.S. v. Gonzales*, 150 F.3d 1246, 1256 (10th Cir. 1997) (assuming that First Amendment right of access applies to pretrial documents filed in a criminal case); *U.S. v. Ellis*, 90 F.3d 447 (11th Cir. 1996) (First Amendment right of access applies to transcripts of *in camera* hearings).

[9] *See Grove Fresh Distribs. Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) (recognizing First Amendment right of access to civil proceedings and records); *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (finding First Amendment standard applies to documents filed in connection with civil summary judgment motion); *Publicker*, 733 F.2d at 1066 (3rd Cir. 1984) (concluding that First Amendment analysis of *Richmond Newspapers* applies equally to civil cases); *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1181 (6th Cir. 1983) (vacating district court's sealing of all documents in civil action based on First Amendment and common law right of access).

[10] *See U.S. v. Chagra*, 701 F.2d 354, 363-64 (5th Cir. 1983) (finding First Amendment right of access to pretrial bail proceedings); *Rovinsky v. McKaskle*, 722 F.2d 197, 201 (5th Cir. 1984) (relying on First Amendment right of access in *Chagra* and *Richmond Newspapers* for assertion that the right to a public trial "extends at least" to pretrial hearings such as jury selection and motions to suppress evidence); *U.S. v. Edwards*, 823 F.2d 111, 118 (5th Cir. 1987) (finding that First Amendment guarantees right of access to record of closed proceedings and raises presumption that transcript of such proceedings be released within a reasonable time).

analogous to other categories of documents for which the federal courts have acknowledged a First Amendment right of access, such as motions, briefs, orders and hearing transcripts.[11]

Furthermore, while both factors should be considered, the Supreme Court and this Circuit have held that a document need not meet both prongs for the First Amendment right of access to attach. *See Globe Newspaper Co.*, 457 U.S. at 605 n.13 (recognizing right of access to testimony of minor sex crimes victim despite lack of history of access); *Chagra*, 701 F.2d 354 at 363-64 (same regarding bail reduction hearings). Rather, "the first amendment must be interpreted in light of current values and conditions," *Chagra*, 701 F.2d at 363. As this Circuit has recognized, "[t]he first amendment right of access is, in part, founded on the societal interests in public awareness of, and its understanding and confidence in, the judicial system. ... Moreover, public access is a check on judicial conduct and tends to improve the performance both of the parties and of the judiciary," and "[t]hese interests are as affected by [the current] proceedings...as they are by other judicial proceedings." *Id.* The public has an obvious interest in understanding—and if it is improper, curbing—a legal process that can be used by the government to quickly and quietly silence news reporting on the Internet, and such an interest can only play a significant positive role as a check on that process.  To maintain confidence in the judicial system, the public must understand how such an egregious prior restraint could be allowed to occur.

## C.      Movant Moe's Fourth Amendment Right of Access

Numerous courts have held that the targets of a search and seizure have a Fourth Amendment right to inspect and copy the sealed affidavit on which the warrant issued. *See In re Search Warrants for 2934 Anderson Morris Road*, 48 F. Supp.2d 1082, 1083 (N.D. Ohio 1999); *In re Search of Up North Plastics, Inc.*, 940 F.Supp. 229, 232 (D. Minn. 1996); *In re Search Warrants Issued August 29, 1994*, 889 F.Supp. 296, 299-300 (S.D. Ohio 1995). And although Rackspace has characterized the Order as a subpoena, it has also made clear that it was ordered

---

[11] *See, e.g., In re Time Inc.*, 182 F.3d 270, 271 (4th Cir. 1999) (pretrial motions and briefs, including discovery-related motions); *U.S. v. Ellis*, 90 F.3d 447, 451 (11th Cir. 1996) (transcripts of *in camera* hearings once the case was concluded); *Associated Press*, 705 F.2d at 1145 (all pretrial documents); *Seattle Times Co. v. U.S. Dist. Court*, 845 F.2d 1513, 1517 (9th Cir. 1988) (pretrial release proceedings and documents filed therein); *In re Washington Post*, 807 F.2d at 390 (plea and sentencing documents in espionage case).

to immediately provide the servers to the government. The physical servers that were seized are owned by Rackspace, but the information stored on them was not.[12]   Rather, it is Movant Moe who has a direct possessory interest in the information stored on Rackspace's servers, which includes not only Indymedia's published materials but also private communications and information belonging to Moe.  A seizure has clearly occurred, and the Order is tantamount to a search warrant, even if not presented in that form. "That which looks like a duck, walks like a duck, and quacks like a duck will be treated as a duck even though some would insist upon calling it a chicken." *Tidelands Marine Service v. Patterson*, 719 F.2d 126, n.3 (5th Cir. 1983). Therefore, Moe has a Fourth Amendment right to examine the records underlying this seizure in order to assess its reasonableness.

Due process also requires that the records be unsealed so that Moe may examine them. *See In re Wag-Aero Inc.*, 796 F.Supp. 394 (E.D. Wis. 1992) (granting motion to unseal brought by subject of search, and rejecting government's assertion that the continued sealing of a search warrant affidavit was justified because of an ongoing investigation). Like the movant in *Wag-Aero*, Moe has a right to consider whether he wishes to challenge the issuance of the Order or seek to obtain the return of his property (i.e., any copies made by the government), and "these rights are obviously seriously encumbered by the present seal." *Id.* at 395. Here, as in that case, any speculative "harm to the United States of disclosure at this time is significantly outweighed by the injury to [movant's] due process rights flowing from nondisclosure." *Id.*

Without access to the case file, Moe cannot effectively allege that his Fourth Amendment rights (or statutory privacy rights[13]) were violated by the seizure, even though such a violation is

---

[12] In the search and seizure context, "'property' includes documents, books, papers, any other tangible objects, *and information.*" Fed. R. Crim.P. 41(a)(2)(A) (emphasis added).

[13] Pursuant to the Stored Communications Act (SCA), Rackspace is prohibited from providing the government with the content of stored electronic communications in response to a mere subpoena. 18 U.S.C. § 2702(a)(1). The servers contained, *inter alia*, the contents of unopened electronic emails. Because the servers contained journalists' work product and documentary materials as well, their seizure must also comply with the Privacy Protection Act (PPA), which restricts the search and seizure of such materials. 42 U.S.C. § 2000aa.  *See also Steve Jackson Games, Inc. v. U.S. Secret Service*, 816 F. Supp. 432 (W.D.Tex. 1993) (holding that seizure of computer game publisher's Internet bulletin board system violated SCA and PPA), *aff'd by Steve Jackson Games, Inc. v. U.S. Secret Service*, 36 F.3d 457 (5th Cir. 1994).

especially likely here.  As the Supreme Court has held, the particularity requirement of the

Fourth Amendment "is to be accorded the most scrupulous exactitude" when expressive

materials are seized. *Stanford v. Texas*, 379 U.S. 476, 485 (1965); *see also U.S. v. Peden*, 891

F.2d 514, 518 (5th Cir. 1989). Thus,

> [W]hile the general rule under the Fourth Amendment is that any and all
> contraband, instrumentalities, and evidence of crimes may be seized on probable
> cause (and even without a warrant in various circumstances), it is otherwise when
> materials presumptively protected by the First Amendment are involved. It is the
> risk of prior restraint which is the underlying basis for the special Fourth
> Amendment protections accorded searches for and seizure of First Amendment
> materials that motivates this rule.

*Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 63-64 (1989).  It is because of these

special protections that the Supreme Court, when considering a warrant to search the

premises of a newspaper, found that the First Amendment did not independently bar such a

search.  The Court instead presumed that the Fourth Amendment's warrant requirement could

provide adequate protection for free speech:

> There is no reason to believe, for example, that magistrates cannot guard against
> searches of the type, scope, and intrusiveness that would actually interfere with
> the timely publication of a newspaper. Nor, if the requirements of specificity and
> reasonableness are properly applied, policed, and observed, will there be any
> occasion or opportunity for officers to rummage at large in newspaper files or to
> intrude into or to deter normal editorial and publication decisions. The warrant
> issued in this case authorized nothing of this sort.

*Zurcher v. Stanford Daily*, 439 U.S. 885 (1978).  The Supreme Court never considered it a

realistic possibility that even a valid search warrant could be used as a blanket prior restraint

against a news publisher, and would have balked at the same result from a mere subpoena.

The plain fact is that this was far from a typical seizure—it was a seizure that *silenced*.

The Internet "is the most participatory form of mass speech yet developed, entitled to the highest

protection from governmental intrusion." *Reno v. American Civil Liberties Union*, 521 U.S. 844,

863 (1997) (internal citations omitted).  Movants and the public must understand how this

protection was cast aside in this case.

### IV.    CONCLUSION

For all the foregoing reasons, Movants respectfully request that the Court grant this

motion and lift all sealing orders regarding the Commissioner's Subpoena served on Rackspace Managed Hosting.   In the absence of immediate unsealing, Movants request an expedited hearing, as well as an order to allow briefing by amici, if part of this Court's practice.

Respectfully submitted by,

James A. Hemphill
State Bar No. 00787674
W. Reid Wittliff
State Bar No. 00791951
GRAVES, DOUGHERTY, HEARON & MOODY, P.C.
401 Congress Avenue, Suite 2200
Austin, Texas 78701
Telephone: (512) 480-5600
Facsimile: (512) 478-1976

Local Counsel for Movants
ELECTRONIC FRONTIER FOUNDATION, URBANA-CHAMPAIGN INDEPENDENT MEDIA CENTER FOUNDATION and JEFFREY MOE.

Lee Tien, Esq.
Kurt Opsahl, Esq.
Kevin Bankston, Esq.
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110-1914
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Appearing Pro Se, and Counsel for Movants
URBANA-CHAMPAIGN INDEPENDENT MEDIA CENTER FOUNDATION, and JEFFREY MOE.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| IN RE COMMISSIONER'S SUBPOENA TO RACKSPACE MANAGED HOSTING | § § § § § § § | CASE NO. _____<br><br>**APPENDIX IN SUPPORT OF MOTION TO UNSEAL** |

## SUMMARY OF FACTS

Pursuant to Local Rule CV-7(b), Movants provide the following summary of the facts not appearing in the record that are relied upon in support of Movants' motion to unseal, with supporting affidavits and other pertinent documents.

Movant the Electronic Frontier Foundation is a nonprofit, membership-supported civil liberties organization working to protect civil rights and free expression in the digital world. Affidavit of Kurt Opsahl ("Opsahl Affidavit"), ¶ 2. EFF publishes educational and advocacy material to its 13,000 members and the public, via both a weekly email newsletter and its website, http://www.eff.org/. *Id.* Movant Urbana-Champaign Independent Media Center Foundation (UCIMC) is an independent news media outlet and an autonomous portion of Indymedia, a global collective of Independent Media Centers (IMCs) and thousands of journalists offering grassroots, non-corporate coverage of news events. *See* <http:/www.ucimc.org>. IMCs publish information often missed by mainstream media organizations, and offer unique perspectives on world events. Affidavit of Jeffrey Moe ("Moe Affidavit"), ¶ 7.

Movant Jeffrey Moe is an individual who operated and administered two Internet servers that were hosted by Rackspace Managed Hosting, Ltd. Moe Affidavit, ¶¶ 2-3. Rackspace Managed Hosting, Ltd. is a subsidiary of Rackspace, Ltd., a San Antonio-based Internet hosting

company that provides dedicated servers to customers, supplying the data center, hardware (servers and other devices) and the Internet connectivity necessary to operate an online service, but allowing the customer to directly operate the machines. Moe Affidavit, ¶¶ 2-3; *see also* <http://www.rackspace.com>.   The servers were physically located in Rackspace's facility in London, England. Moe Affidavit, ¶ 4.

Moe provided space on these servers to over twenty Independent Media Centers in the United States and around the world, offering independent journalists a soapbox upon which to speak in a public forum. Moe Affidavit, ¶¶ 6-7.

Through these servers, Moe provided Indymedia with Internet services for news websites and an online radio server. Moe Affidavit, ¶ 6. The hosted websites included local IMCs from Western Massachusetts, Andorra, Brazil, the Czech Republic, Euskal Herria (Basque Country), Galiza, Italy, Poland, Portugal, the United Kingdom, Uruguay, multiple sites from France and Belgium and a popular Indymedia Internet radio site. Moe Affidavit, ¶ 8.

The Internet radio streams used the domain radio.uk1.indymedia.org, providing about ten streams to the public. Moe Affidavit, ¶ 9.   The servers provided email services for BLAG (Brixton Linux Action Group), syndicate.org.uk, and foref.org (For Refugees), and a beta test email service at indymail.org. Moe Affidavit, ¶ 10.   In addition, the servers contained an archive of emails from the server's technical support staff.  *Id.* At the time of the seizure, the servers contained stored communications and unopened email less than 180 days old, including some of Moe's email communications. Moe Affidavit, ¶ 12.

In addition, Moe personally operated www.blagblagblag.org, a website offering BLAG, a version of the Linux operating system, along with technical support and forums for communicating about the software. Moe Affidavit, ¶ 6.

The IMC content is a widely read news medium, with the two servers transmitting over 3.2 terabytes of information a month, serving over 18 million page views a month. Moe Affidavit, ¶¶ 14-15. By comparison, the MySanAntonio.com website, a partnership between the San Antonio Express-News newspaper and KENS 5 television, averages about 15 million page views monthly. *See* <http://www2.mysanantonio.com/aboutus/mysa/>. Pursuant to the IMC policy of preserving privacy, the servers were configured not to log the particular Internet Protocol addresses used to read or post news items. Moe Affidavit, ¶ 16.

On or around Thursday, October 7, 2004, Rackspace was served with a Commissioner's Subpoena, pursuant to 28 U.S.C. § 1782 and a Mutual Legal Assistance Treaty (the "Seizure Order"). Oct. 8, 2004, email from Jennifer O'Connell, attached as Exhibit A to Opsahl Affidavit. A Commissioner's Subpoena is a special subpoena issued by the District Court in which the entity holding the requested information resides. Since Rackspace is based in San Antonio, this would be this Court in the Western District of Texas. Ordinarily, an Assistant United States Attorney for the relevant district is appointed as the Commissioner, and is empowered under the statute to issue a subpoena.

While Rackspace has refused to provide a copy of the Seizure Order or even discuss its contents, in an October 7, 2004 email, Rackspace explained to Moe that it had "received a federal order to provide your hardware to the requesting agency." Email from Jennifer O'Connell, attached as Exhibit A to Moe Affidavit. The hardware was seized the same day, and all of the news media and other material on Moe's servers was silenced around 17:18 GMT (11:18 CST) on October 7, 2004. Moe Affidavit, ¶ 11.

News of the seizure generated news coverage around the world. *See e.g.* articles attached as Exhibit B to Opsahl Affidavit.   On October 8, 2004, in a public statement, Rackspace further explained:

> In the present matter regarding Indymedia, Rackspace Managed Hosting, a U.S. based company with offices in London, is acting in compliance with a court order pursuant to a Mutual Legal Assistance Treaty (MLAT), which establishes procedures for countries to assist each other in investigations such as international terrorism, kidnapping and money laundering. Rackspace responded to a Commissioner's subpoena, duly issued under Title 28, United States Code, Section 1782 in an investigation that did not arise in the United States. Rackspace is acting as a good corporate citizen and is cooperating with international law enforcement authorities. The court prohibits Rackspace from commenting further on this matter.

Oct. 8, 2004, email from Jennifer O'Connell, attached as Exhibit A to Opsahl Affidavit.

Rackspace has refused to provide further explanation, or even the name or contact information of a government representative with whom Moe could discuss the Seizure Order, contending that the case was "under seal."   Opsahl Affidavit, ¶ 3-4. Counsel to Moe has contacted the Federal Bureau of Investigation, the Departments of State and Justice, the U.S. Attorney's Office in San Antonio and this Court in an effort to independently determine the origin of the Seizure Order, but no agency has accepted responsibility. Opsahl Affidavit, ¶ 5-7.

On October 12, 2004, Jason Carter, an Account Representative of Rackspace, informed Moe that "the court order is being complied with and your servers in London will be online at 5pm GMT." Oct. 12, 2004, email from Jason Carter, attached as Exhibit B to Moe Affidavit. Rackspace did not explain why the server was returned, or provide any further explanation of why the server had been seized in the first place. *Id.*

4

Respectfully submitted by,

James A. Hemphill
State Bar No. 00787674
W. Reid Wittliff
State Bar No. 00791951
GRAVES, DOUGHERTY, HEARON & MOODY, P.C.
401 Congress Avenue, Suite 2200
Austin, Texas 78701
Telephone: (512) 480-5600
Facsimile: (512) 478-1976

Local Counsel for Movants
ELECTRONIC FRONTIER FOUNDATION, URBANA-
CHAMPAIGN INDEPENDENT MEDIA CENTER
FOUNDATION and JEFFREY MOE.

Lee Tien, Esq.
Kurt Opsahl, Esq.
Kevin Bankston, Esq.
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110-1914
Telephone: (415) 436-9333
Facsimile: (415) 436-9993

Appearing Pro Se, and Counsel for Movants
URBANA-CHAMPAIGN INDEPENDENT MEDIA CENTER
FOUNDATION, and JEFFREY MOE.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| § | |
| IN RE COMMISSIONER'S SUBPOENA § | CASE NO. _____ |
| TO RACKSPACE MANAGED § | |
| HOSTING § | **AFFIDAVIT OF JEFFREY** |
| § | **MOE IN SUPPORT** |
| § | **OF MOTION TO UNSEAL** |
| § | |

I, JEFFREY S. MOE, declare:

1.      I am the operator and systems administrator for two Internet servers, known as ahimsa1 and ahimsa2 (the "Servers"), which were seized by the government on October 7, 2004, and have personal knowledge of the following facts and could testify competently to them if called as a witness.

2.      On or around September 6, 2001, I contracted with Rackspace Managed Hosting, Ltd., a subsidiary of the San Antonio based Rackspace, Ltd. Internet service provider, to obtain their managed hosting service.

3.      Pursuant to our managed hosting agreement, Rackspace provided initially one, then two, dedicated servers, supplying the data center, hardware (servers and other devices) and Internet connectivity necessary to operate an online service, but allowed me to directly operate the machines.  The second sever came online in April 2003.

4.      The Servers were physically located in Rackspace's data center facility in London, England.

5.      On the Servers, I personally operated www.blagblagblag.org, a website offering BLAG  (BLAG Linux And GNU), a version of the Linux operating system, along with technical support and forums for communicating about the software.

6.      In addition, through the Servers, I provided – without charge – Internet services for news websites, an online radio server, to over twenty Independent Media Centers ("IMCs") in the United States and around the world.

7.      IMCs are autonomous portions of Indymedia, a collective of independent media organizations and thousands of journalists offering grassroots, non-corporate coverage of news events. IMCs publish information often missed by mainstream media organizations, and offer unique perspectives on world events and offer independent journalists a soapbox upon which to speak in a public forum.

8.      Sites hosted on the Servers included local IMCs from Western Massachusetts, Andorra, Brazil, the Czech Republic, Euskal Herria (Basque Country), Galiza, Italy, Poland, Portugal, the United Kingdom, Uruguay, multiple sites from France and Belgium and popular Indymedia Internet radio streams.

9.      The Internet radio streams used the domain radio.uk1.indymedia.org, providing about ten streams to the public.

10.      The Servers provided email services for the Brixton Linux Action Group, syndicate.org.uk, foref.org (For Refugees), and a beta test email service at indymail.org. In addition, the servers contained an archive of emails from the server's technical support staff.

11.      The Servers went offline around 17:18 GMT (11:18 CST) on October 7, 2004.

12.      On October 7, 2004, the Servers contained stored communications and unopened email less than 180 days old, including my own unopened email communications.

13.     On October 7, 2004, the Servers contained work product materials and documentary information stored for the purpose to disseminate information to the public via the Internet.

14.     Based on my experience administrating the Servers and my knowledge of the Server's log files and traffic information, I estimate that the Servers as a whole provided the public with an average of over 18 million page views per month.  A page view is recorded every time an Internet browser, such as Netscape Navigator, views a webpage.

15.     In 2004, the Servers distributed an average of over 3.2 terabytes of information per month.  A terabyte is 1024 gigabytes, and can contain the equivalent information as hundreds of millions of pages of text.

16.     While the Servers logged aggregate traffic information, they were configured never to log the specific Internet Protocol address of the computer that reads or posts news and information to IMC sites. An Internet Protocol address, or IP address, is a unique number used by machines to refer to each other when sending information through the Internet.

17.     Attached hereto as Exhibit A is a true and correct copy of an email message I received from Jennifer O'Connell, the Acceptable Use Policy Manager for Rackspace, on October 7, 2004.

18.     Attached hereto as Exhibit B is a true and correct copy of an email message I received from Jason Carter, an Account Manager for Rackspace, on October 12, 2004.

I declare under penalty of perjury under the laws of the United States that the

foregoing is true and correct.  Executed on this the _____ day of October 2004 in Fort

Collins, Colorado.

_____
Jeffrey Scott Moe

Subject: Updated Rackspace Ticket #041007-0782
From: support@rackspace.com
To: jeff@themoes.org
Date: 10/07/04 11:25 am

Dear Jeff Moe,

The following support ticket has been updated:

Ticket #:   041007-0782
Subject:    we cannot reach the box
Status:     New
Account #:  9086
Computer #: 26445
Date:       10/07/2004 12:25pm
Comment:
-------------------------------------------------------------
-------
Hello,

Unfortunately, we have received a federal order to provide your
hardware to the requesting agency.  We are complying at this
time.  Our datacenter technicians are building you a new server
which will be online as soon as possible.  Your account manager
will notify you once the new server is online and available.

I apologize for abruptness of this.  However, we are required to
comply with all federal orders of this nature.

Please let us know if there is anything that we can do to make
this easier on you.

Regards,

Jennifer O'Connell
AUP Administrator
Rackspace Managed Hosting
The Managed Hosting Specialist™
1-800-961-4454 ext.1127

-------------------------------------------------------------
-------

You may view your ticket here:
https://my.rackspace.com/tckt_display.php?ticket_select=041007-
0782

Should you have any questions or comments, please feel free to
visit my.rackspace.com and add them to your ticket.  For security
purposes, comments may only be added to your support tickets via
the MyRackspace Portal.  Emailed replies to this notification
message will not be received by Rackspace staff.

As always, it is our pleasure to assist in any way possible!

If you have any further questions or concerns, please do not
hesitate to contact us via phone at the numbers listed below or
update the support ticket via my.rackspace.com.

Thank you,
Rackspace Managed Hosting
my.rackspace.com
Toll Free: (US) 800 961-4454 (UK) 0800 587 2306
International: (US) +1 210 892-4030 (UK) +44 20 8897 4693

Subject: Servers
From: JJLUCIA Carter <jlucarter@yahoo.com>
To: jeff@themoes.org
CC: jcarter@rackspace.com
Date: 10/12/04 07:00 pm

Jeff:

I know that you have gone through more than I can
possibly understand. I was just told that the court
order is being complied with and your servers in
London will be online at 5pm GMT.

I will pass along anymore information that becomes
available and that I am allowed to.

Again, I do not have the words to understand nor
express the feelings and emotions you have endured
since this began.

Regards,

Jason Carter
Business Development Consultant
jcarter@rackspace.com

---

Do you Yahoo!?
Yahoo! Mail - You care about security. So do we.
http://promotions.yahoo.com/new_mail

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| | § | |
| IN RE COMMISSIONER'S SUBPOENA | § | CASE NO. _____ |
| TO RACKSPACE MANAGED | § | |
| HOSTING | § | AFFIDAVIT OF KURT |
| | § | OPSAHL IN SUPPORT |
| | § | OF MOTION TO UNSEAL |
| | § | |

I, KURT B. OPSAHL, declare:

1.     I am a Staff Attorney with the Electronic Frontier Foundation, counsel for Jeffrey Moe and the Urbana-Champaign Independent Media Foundation, and have personal knowledge of the following facts and could testify competently to them if called as a witness.

2.     The Electronic Frontier Foundation is the leading civil liberties organization working to protect rights in the digital world. Founded in 1990, EFF actively encourages and challenges industry and government to support free expression and privacy online. EFF is a member-supported organization and maintains one of the most linked-to websites in the world at http://www.eff.org/. EFF publishes educational and advocacy material to its 13,000 members and the public, via both a weekly email newsletter and its website.

3.     On October 7 and 8, 2004, I had several telephone conversations with Jennifer O'Connell, Acceptable Use Policy Manger of Rackspace Managed Hosting, regarding the seizure of two Internet servers (the "Servers") hosted by Rackspace pursuant to an agreement with Jeffrey Moe. Ms. O'Connell said the Servers were provided to a federal agency pursuant to a court order, but refused to provide a copy of

the order, name the agency that requested the seizure, name the agency that received the

Servers, identify the court that has issued the order, say when the order was served or

when the order was issued. While she confirmed that she was served with the order, Ms.

O'Connell informed me that she could not say more "on advice of counsel." She refused

to identify the counsel who had provided that advice, but suggested I speak to Gerorge

Parks, Rackspace's law enforcement liaison.

4.      On October 8, 2004, I spoke with George Parks, a former FBI agent and

private investigator who works with Rackspace as a law enforcement liaison. He also

refused to provide further information about the order, saying the court order was "under

seal." I informed Mr. Parks that the government had seized the content of Mr. Moe's

electronic communications in apparent violation of the Electronic Communications

Privacy Act. After consulting with persons he refused to identify, Mr. Parks informed me

that this did not change Rackspace's position.

5.      On October 12, 2004, I spoke with Supervisory Special Agent Joe Parris

of the Federal Bureau of Investigation National Press Office. He confirmed that

Rackspace has received a subpoena through the Mutual Legal Assistance Treaty, but

informed me that the U.S government was not a party to the case, and to the best of his

knowledge, the FBI was not involved. He said that the Department of Justice usually

gets requests pursuant to the Mutual Legal Assistance Treaty through the State

Department and serves it through the local United States Attorney, and suggested that we

contact the U.S. Attorney's Office in Texas and the State Department.

6.      On October 12, 2004, I spoke with Assistant United States Attorney

Murphy of the Criminal Division of the United States Attorney's Office in San Antonio,

Texas.  He denied any knowledge of a court order or subpoena to Rackspace, but said he would check with other attorneys in his office and get back to me.  Subsequently, he has not provided any further information.

7.      On October 13, 2004 I spoke with representatives of the Departments of Justice and State.  In each case, the representatives denied any knowledge of an order or subpoena to Rackspace, but said they would check and get back to me.  We have not received any further information from either Department.

8.      Attached hereto as Exhibit A is a true and correct copy of an email message I received from Jennifer O'Connell, the Acceptable Use Policy Manager for Rackspace, on October 8, 2004.

9.      Attached hereto as Exhibit B are true and correct copies of press articles concerning the seizure from media outlets throughout the world.

10.     I am informed and believe that Rackspace, Ltd. is a Texas Limited Liability Company doing business as Rackspace Managed Hosting.  I am informed and believe that Rackspace Managed Hosting, Ltd. is a registered company in England, No. 3897010.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed on this the 20th day of October 2004 in San Francisco, California.

_____
Kurt B. Opsahl

From: "Jennifer O'Connell" <joconnel@rackspace.com>
Subject: **Rackspace Statement Regarding Indymedia**
Date: October 8, 2004 11:22:06 AM PDT
To: kurt@eff.org

In the present matter regarding Indymedia, Rackspace Managed Hosting, a
U.S. based company with offices in London, is acting in compliance with
a court order pursuant to a Mutual Legal Assistance Treaty (MLAT), which
establishes procedures for countries to assist each other in
investigations such as international terrorism, kidnapping and money
laundering. Rackspace responded to a Commissioner's subpoena, duly
issued under Title 28, United States Code, Section 1782 in an
investigation that did not arise in the United States. Rackspace is
acting as a good corporate citizen and is cooperating with international
law enforcement authorities. The court prohibits Rackspace from
commenting further on this matter.

 For additional information on the MLAT, please visit
http://library.lp.findlaw.com/articles/file/00297/002460/title/Subject/t
opic/Criminal%20Justice_Extradition%20and%20Detainers/filename/criminalj
ustice_2_2251

Annalie Drusch
Director, Corporate Communications
Rackspace Managed Hosting
210.892.4000

EXB
"A"



Search: [ Articles--last 7 days ] for _____ [ Go ]

News | Business | Sports | Entertainment | Living | Travel | Shop Local | Classifieds | Jobs | Cars | Homes

# Who's Your Pick?

Take the PollingPoint Presidential Election Survey **>>>**

Welcome **Guest**
**Sign Up | Sign In**
**Member Benefits**

Back to Home > Star-Telegram >

Friday, Oct 08, 2004

**Star-Telegram**

**Texas News**

📧 email this    🖨 print this

Posted on Fri, Oct. 08, 2004

## San Antonio web-hosting company gives servers to government

**T.A. BADGER**
**Associated Press**

**SAN ANTONIO -** A Texas Internet company this week surrendered hard drives from a pair of its Web servers in England to U.S. government officials, but the company says it's not allowed to say why.

San Antonio-based Rackspace Managed Hosting said it gave up the equipment after receiving a court order under an international treaty governing multi-nation investigations of crimes such as terrorism, kidnapping and money laundering.

But officials from the Independent Media Center, whose London office leased the Web servers for Internet affiliates in more than two dozen countries, says it has been kept in the dark about what the U.S. investigators might be looking for.

"We don't know what court made the order or why and we don't know the agency involved," said Hep Sano, an IMC spokeswoman in San Francisco. "Was it the FBI? Was it the Secret Service? Was it the (National Security Agency)? We really don't know."

The IMC, better known as "Indymedia", is a loosely organized collective of online journalists and others posting information to Web sites.

Indymedia describes itself as "a democratic media outlet for the creation of radical, accurate and passionate tellings of truth."

Its central Web site on Friday included stories about a lesbian activist's murder in Sierra Leone, protests against welfare reform in Germany and last weekend's march in Washington against the Iraq war.

The hard drives surrendered in London hosted Internet sites for a disparate group of Indymedia outlets. Most were based in Europe, but a few were from South America and one is in western Massachusetts.

In a brief statement, Rackspace said it was complying with terms of a bilateral treaty between the United States and Britain.

EXP. "B"

According to the State Department's Web site, the Mutual Legal Assistance Treaty authorizes cooperating federal law-enforcement agencies to summon witnesses, compel the production of documents, issue search warrants and to serve subpoenas.

Officials from the U.S. Justice Department in Washington did not immediately respond to a phone call from The Associated Press.

Rackspace says the Indymedia investigation did not arise in the United States, and that the company is "acting as a good corporate citizen" and that the court order it received prohibits further comment.

Rackspace, founded in 1998, provides managed Internet hosting for corporate clients ranging from small startups to Fortune 500 companies.

Sano says Indymedia leaders and Rackspace had an encounter with the FBI during the summer when an Indymedia outlet in France posted personal information about undercover agents reportedly working in Switzerland.

She says that information was removed from the site, and that Rackspace told Indymedia the problem was solved.

Sano says that's the usual way Rackspace and Indymedia work together to deal with troubles. But in this case, she said, "we have no recourse because we don't know who to apply to."

She suspects that the unnamed U.S. agency went after the servers on a fishing trip.

"They're just using some excuse so they can see what's on the machines," Sano said. "But we scrub the machine logs religiously to protect posters' anonymity."

 email this   print this

| Ads by Google |
|---|
| **McNabb on Extradition**<br>Fight International Extradition. Learn about extradition treaties.<br>www.internationalextradition.com |
| **Michael Moore DVDs**<br>Buy the ultimate Moore DVD box set! Bowling for Columbine and more!<br>www.michaelmooredvd.com |
| **Rackspace Servers**<br>Rackspace - The Hosting Specialists Full-Scale Solutions & 0% Downtime!<br>www.rackspace.com |



News | Business | Sports | Entertainment | Living | Travel   | Shop Local | Classifieds | Jobs | Cars | Homes
About the Real Cities Network | Terms of Use & Privacy Statement | About Knight Ridder | Copyright



# FBI returns seized news servers

**Servers seized by the FBI from the alternative media network known as Indymedia have been returned.**

The servers in the outskirts of London were taken last week by the FBI which said it was acting on behalf of Italian and Swiss authorities.

Indymedia hosts sites, news and radio feeds for anti-globalisation groups and other campaigners for social justice.

The media group is now taking legal advice about what action it can take over the seizure of its hardware.

### International investigation

During the 7 October raid hard drives were taken that held the websites for many local Indymedia groups, audio feeds for net radio stations as well as several other groups.

Indymedia said some of the 20 sites knocked out by the raid were restored from back-up copies soon after the originals were taken.

> **We are exploring all avenues to hold the government accountable for this improper and unconstitutional silencing of independent media**
> Kurt Opsahl, EFF

Others, such as Antwerp, Belgrade, Liege and Lille, took longer to restore.

Indymedia said some of its local affiliates, notably Uruguay, Italy, Western Massachusetts and Nantes, lost data because of the seizure.

The media group said it had verified that the hard drives returned on 13 October were the ones actually taken in the raid.

With the help of the cyber-liberties group the Electronic Frontier Foundation, it is making sure the returned data is secure and has taken its own copy of it in case of future legal action.

"EFF is deeply concerned about the grave implications of this seizure for free speech and privacy," said Kurt Opsahl, staff attorney for the EFF.

"We are exploring all avenues to hold the government accountable for this improper and unconstitutional silencing of independent media," he said.

The raid was also condemned by the International Federation of Journalists which called it an: ""unacceptable and intrusive international police action".

### Gagging order

The drives were seized from the London offices of a San Antonio-based company called Rackspace that hosts the Indymedia sites.

Rackspace said the legal justification for the raid included a gagging order that prevented it revealing details.

The servers were apparently seized under the Mutual Legal Assistance Treaty which is typically used by nations co-operating to investigate cross-border crimes such as terrorism, kidnapping and money laundering.

In a statement posted on its main website Indymedia said evidence was emerging that four different countries, the US, UK, Italy and Switzerland, were behind the server seizure.

Italian authorities were reportedly investigating the Italian Indymedia group for "supporting terrorism".

Swiss authorities said the raid could help its investigation of Indymedia coverage of 2003's G8 Summit in Evian.

Story from BBC NEWS:
http://news.bbc.co.uk/go/pr/fr/-/1/hi/technology/3742284.stm

Published: 2004/10/14 10:36:27 GMT

© BBC MMIV



# US seizes independent media sites

**The FBI has shut down some 20 sites which were part of an alternative media network known as Indymedia.**

A US court order forced the firm hosting the material to hand over two servers in the UK used by the group.

Indymedia says it is a news source for the anti-globalisation movement and other social justice issues.

The reasons behind the seizure are unclear but the FBI has reportedly said the action was taken at the request of Italian and Swiss authorities.

**Legal action**

The servers affected were run by Rackspace, a US web hosting company with offices in London.

It said it had received a court order from the US authorities last Thursday to hand over the computer equipment at its UK hosting facility.

> **The way this has been done smacks more of intimidation of legitimate journalistic inquiry than crime-busting**
> Aidan White, International Federation of Journalists

"Rackspace is acting as a good corporate citizen and is cooperating with international law enforcement authorities," said a statement by the company.

It said it was responding to an order issued under the Mutual Legal Assistance Treaty. Under the agreement, countries assist each other in investigations such as international terrorism, kidnapping and money laundering

The reasons behind the action against the Indymedia websites are unclear.

The group said the servers affected had hosted the sites of more then 20 local collectives and audio streams for several radio stations, as well as several other projects.

"Indymedia had been asked last month by the FBI to remove a story about Swiss undercover police from one of the websites hosted at Rackspace," said the group in a statement.

"It is not known, however, whether Thursday's order is related to that incident since the order was issued to Rackspace and not to Indymedia."

**'Intolerable and intrusive'**

A FBI spokesperson told the AFP news agency that it was not an FBI operation, saying the order had been issued at the request of Italian and Swiss authorities.

The seizure has sparked off protests from journalist groups.

"We have witnessed an intolerable and intrusive international police operation against a network specialising in independent journalism," said Aidan White, general secretary of the International Federation of Journalists.

"The way this has been done smacks more of intimidation of legitimate journalistic inquiry than crime-

busting."

The UK site of Indymedia is back up and running but several of the other 20 sites affected are still offline.

In the US, the civil liberties group, the Electronic Frontier Foundation (EFF) said it was working with Indymedia over how to react to the seizures.

"The constitution does not permit the government unilaterally to cut off the speech of an independent media outlet, especially without providing a reason or even allowing Indymedia the information necessary to contest the seizure," said EFF Staff Attorney Kurt Opsahl.

Story from BBC NEWS:
http://news.bbc.co.uk/go/pr/fr/-/2/hi/technology/3732718.stm

Published: 2004/10/11 09:01:49 GMT

© BBC MMIV

**YAHOO! News**
AUSTRALIA & NZ

Yahoo! - My Yahoo! - Help

http://au.news.yahoo.com//041008/19/r52t.html

Saturday October 9, 07:59 AM



## News website Indymedia says FBI seized server



WASHINGTON (AFP) - A website billed as a grassroots news source for the anti-globalization movement and other issues said one of its Web servers was shut down after the FBI served a subpoena.

The Independent Media Center said the FBI issued an order to hosting company Rackspace "to remove physically one of our servers."

Photo AFP

The FBI acknowledged that a subpoena had been issued but said it was at the request of Italian and Swiss authorities.

"It is not an FBI operation," FBI spokesman Joe Parris told AFP.

"Through a legal assistance treaty, the subpoena was on behalf of a third country."

The FBI spokesman said there was no US investigation but that the agency cooperated under the terms of an international treaty on law enforcement.

Rackspace, a US Web hosting company with offices in London, said it complied with a court order "pursuant to a Mutual Legal Assistance Treaty, which establishes procedures for countries to assist each other in investigations such as international terrorism, kidnapping and money laundering." The company declined to elaborate.

"The order was so short-term that Rackspace had to give away our hard drives in the UK," the Independent Media Center said.

Italian news reports said access to Indymedia had been cut as a result of an FBI operation at US and British locations.

Mauro Bulgarelli, a member of Italy's Green party, called it a "provocation and intimidate effort" against the alternative media.

The website was established by organizations during the 1999 World Trade Organization protests claiming the mainstream media failed to adequately cover the news.

It calls itself "a network of collectively run media outlets for the creation of radical, accurate and passionate tellings of the truth."

Indymedia said in a statement it "had been asked last month by the FBI to remove a story about Swiss undercover police from one of the websites hosted at Rackspace."

The statement added, "It is not known, however, whether Thursday's order is related to that incident since the order was issued to Rackspace and not to Indymedia. According to Rackspace, they 'cannot provide Indymedia with any information regarding the order.'"

**Print Me Now!  -  Back to Original Article**

Over 60,000 jobs 

Copyright © 2004 Yahoo! Inc. All rights reserved.

Privacy Policy - Terms of Service - Disclaimer

Partner copyright:

Copyright © 2004 AFP. All rights reserved. All information displayed in this section (dispatches, photographs, logos) are protected by intellectual property rights owned by Agence France-Presse. As a consequence you may not copy, reproduce, modify, transmit, publish, display or in any way commercially exploit any of the contents of this section without the prior written consent of Agence France-Presses.

Questions or suggestions? Send us feedback.



NEWS | ⬤AREER | DOMAIN | DRIVE | FINANCE | ⬤YSEARCH

members | login | register

### RESOURCES

- OPINION
- REVIEWS
- RESOURCES
- IT JOBS

# FBI seizes Indymedia servers

By Online Staff
October 8, 2004

The FBI has issued an order to hosting provider Rackspace in the US, ordering it to turn over two of the servers hosting the Independent Media Centre's websites in the UK, a statement from the group says.

Rackspace has offices in the US and the UK. Independent Media Center, which is better known as Indymedia, was set up in 1999 to provide grassroots coverage of the World Trade Organisation (WTO) protests in Seattle.

Rackspace complied with the FBI order, without first notifying Indymedia, and turned over Indymedia's server in the UK. This affects over 20 Indymedia sites worldwide, the group said.

Indymedia said it did not know why the order had been issued as it was issued to Rackspace. Rackspace told some of the group's volunteers "they cannot provide Indymedia with any information regarding the order." ISPs have received gag orders in similar situations which prevent them from updating the parties involved on what is happening.

Indymedia said a second server was taken down at Rackspace. This provided streaming radio to several radio stations, BLAG (a Linux distribution), and a handful of miscellanous things.

In August the US Secret Service used a subpoena in an attempt to disrupt the New York city Independent Media Center before the Republican National COnvention by trying to get IP logs from an ISP in the US and the Netherlands.

Last month the US Federal Communications Commission shut down community radio stations around the US. Two weeks ago the FBI asked Indymedia to remove a post on the Nantes IMC that had a photo of some undercover Swiss police and IMC volunteers in Seattle were visited by the FBI on the same issue.

Indymedia said the list of local media collectives affected included Ambazonia, Uruguay, Andorra, Poland, Western Massachusetts, Nice, Nantes, Lilles, Marseille (all France), Euskal Herria (Basque Country), Liege, East and West Vlaanderen, Antwerpen (all Belgium), Belgrade, Portugal, Prague, Galiza, Italy, Brazil, UK, part of the Germany site, and the global Indymedia Radio site.

**Related**
- React to this article
- Submit a news tip

**More news**
- Google launches new site for readers
- Microsoft picks Hungary for service centre
- IT expert indicted on terror charges

Home > Technology > Breaking ● Article

Copyright © 2004. The Sydney Morning Herald.

FairfaxDigital

# US web firm ordered to hand over servers

October 9, 2004 - 10:04AM

A Texas Internet company said it gave US government officials the hard drives from a pair of its Web servers leased to online journalists and others.

San Antonio-based Rackspace Managed Hosting said it turned over the equipment after receiving a court order under an international treaty governing investigations of crimes such as terrorism, kidnapping and money laundering.

Officials from the Independent Media Centre, whose London office leased the Web servers for affiliates in more than two dozen countries, says it has been kept in the dark about what the US investigators might be looking for.

"We don't know what court made the order or why, and we don't know the (federal) agency involved," said Hep Sano, an IMC spokeswoman in San Francisco.

The IMC, better known as "Indymedia", is a loosely organised collective of online journalists and others posting information to Web sites.

Indymedia describes itself as "a democratic media outlet for the creation of radical, accurate and passionate tellings of truth."

Its central Web site on Friday included stories about a lesbian activist's murder in Sierra Leone, protests against welfare reform in Germany and last weekend's march in Washington against the Iraq war.

The hard drives surrendered in London hosted Internet sites for a disparate group of Indymedia outlets. Most were based in Europe, but a few were from South America and one is in western Massachusetts.

Officials from the US Justice Department in Washington did not immediately respond to a call seeking comment.

Rackspace says the Indymedia investigation did not arise in the United States, and that the company is "acting as a good corporate citizen" and that the court order it received prohibits further comment.

© 2004 AP

Brought to you by **aap**

**More breaking news**

10:09pm
      Fitzgibbon back for Kangaroos
9:39pm
      UK cleric charged with urging murder
9:04pm
      Labor's bloodletting continues

Home > World > Breaking News > **Article**

Copyright © 2004. The Sydney Morning Herald.

Wired News



Text Size: A A A **A**

# IndyMedia Gets Its Servers Back

By Wendy M. Grossman    |    Also by this reporter

02:00 AM Oct. 14, 2004 PT

Less than a week after the U.S.-directed London seizure of two of its servers, the collective news organization IndyMedia said Wednesday that the devices have been returned to its service provider, Rackspace.

However, the 20 or so sites that these servers host will remain closed to the public until the organization can inspect the disks and ensure their contents have not been altered.

Both IndyMedia and the Electronic Frontier Foundation, which is providing the collective with legal representation, say it's still unclear exactly what happened, who ordered the seizures or on what basis they were ordered. The best guess insiders offer, because of the sequence of events, is that the seizure was provoked by a posting that originated on IndyMedia's Swiss site, and that the seizure request therefore originated with Swiss police.

The posting in question appeared on IndyMedia's Swiss site about Sept. 7, and included several photographs of two men that accompanying paragraphs in French claimed were undercover Swiss police photographing G8 protesters. The posting was picked up and reposted on a second IndyMedia site based in Nantes, France. These sites are autonomous, like the rest of IndyMedia's 50 sites.

According to Devin Theriot-Orr, a Seattle-based IndyMedia volunteer and an attorney with Edwards, Sieh, Smith, and Goodfriend, around Sept. 22 IndyMedia volunteers received e-mail from Rackspace requesting the removal of the posting and alleging that it contained personal information about and threats against the two officers. The posting was edited to remove a comment about revenge being a dish best served cold and to blank out the officers' faces.

On Oct. 1, Theriot-Orr received a visit from two FBI agents, apparently on behalf of the Swiss government. "They came in and asked questions about the post and I clarified it with them. It's not illegal to take pictures of officers taking pictures of us and posting them, and they agreed and said it was not a U.S. investigation, but a Swiss matter, and they were acting ... on behalf of the Swiss government."

The Swiss government, they told Theriot-Orr, was not concerned about the photos, but wanted personal identifying information removed. "I said, 'OK, I have no power or control over the French IndyMedia center, since each one is autonomous, but I will pass it on.'" They left, and he assumed the matter was resolved. A week later, the two servers went offline.

Rackspace's press statement says little more than the company told IndyMedia at the time. "Rackspace Managed Hosting, a U.S.-based company with offices in London, is acting in compliance with a court order pursuant to Mutual Legal Assistance Treaty (MLAT), which establishes procedures for countries to assist each other in investigations such as international terrorism, kidnapping and money laundering. Rackspace responded to a Commissioner's subpoena, duly issued under Title 28, United States Code, Section 1782 in an investigation that did not arise in the United States. Rackspace is acting as a good

court prohib⬤ Rackspace from commenting further o⬤ ⬤is matter."

Both Theriot-Orr and the EFF's counsel, Kevin Bankston, stressed that no one knows yet what actually happened.

"There are a lot of unanswered questions," said Bankston, "but we are going to take legal actions to get them answered. The immediate problem is solved, but we are trying to figure out what the agency was and which the issuing court was."

Even the FBI agents he's talked to seem unsure. "We think it's clearly illegal, but before we can proceed we need more facts," he said. Once it's identified the court, the EFF's first move will be to ask for the subpoena to be unsealed.

Theriot-Orr compares the seizure to shutting down 20 printing presses, and said, "I'm glad it's happening to us, in that we are prepared to fight it, and we have access to the resources to fight this and make it public."

Ⅲ

Ads by Google

**Is Your Voice Heard?**
Indianapolis needs media democracy.
Let's bring back public access TV.
www.indyaccess.org

**Anti-Bush Shirts and Gear**
Make your statement by wearing it.
Bumper stickers, t-shirts and more!
www.BeatBushGear.com

**$300/Hr Jobs?**
21 Side-by-side Comparisons of Fun Jobs Paying up to $300/Hour.
FunJobsReview.com

**Career Builder's Job List**
Over 900,000 Available Jobs listed
Free to look for your New Job (aff)
www.careerbuilder.com

**Wired News:** Staff | Contact Us | Advertising | RSS | Blogs | Subscribe
We are translated daily into Spanish, Portuguese, and Japanese

© Copyright 2004, Lycos, Inc. All Rights Reserved.
Your use of this website constitutes acceptance of the Lycos **Privacy Policy** and Terms & Conditions